**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

United States of America,

        Plaintiff,                    Criminal Number: 21-20554

v.                              Hon. Denise Page Hood

Romello Johnson,

        Defendant.

_____/

**United States' Memorandum Regarding
<u>Supervised Release Revocation Hearing</u>**

The United States submits this memorandum in anticipation of the continuation of the supervised release revocation hearing, scheduled for October 9, 2024. The purpose of this memorandum is to (1) outline the facts; (2) provide a roadmap of the government's evidence presentation; and (3) address potential legal issues that may arise at the hearing.

### I.    Facts

On June 17, 2024, Romello Johnson assaulted his child's mother, Jazzmine Hamilton, outside her apartment in Romulus, Michigan. Part of the assault was captured on video.

On June 17, 2024, at approximately 6:30 a.m., officers from the Romulus Police Department received a call for assistance from a female requesting officers to

Gateway Townhomes in Romulus for an assault. Responding officers arrived at the apartment and saw that the front door had been kicked and part of the wooden doorframe was laying on the inside the open door. Officers found three children in the home, with no adults. Officers spoke with the children—a seven-year-old boy, a nine-year-old girl, and a twelve-year-old girl.

While speaking with the twelve-year-old, officers learned that Jazzmine Hamilton (the twelve-year-old's sister) was the tenant of the apartment and that the seven-year-old and the nine-year-old were Hamilton's children. The nine-year-old child told officers that she saw her mother's boyfriend (later identified as Johnson) push their mother to the ground outside the apartment. Afterwards, Hamilton ran into the apartment and instructed them to call 911.

Officers obtained and viewed the security video from the apartment complex. The video shows a silver Jeep Grand Cherokee arrive and park in the parking lot in front of the apartment at approximately 6:15 a.m. Two minutes later, a woman (identified as Hamilton) got out of the front passenger seat and a male (identified as Johnson got out of the driver's seat. As Hamilton walked towards the apartment, Johnson ran up to her and threw her to the ground. The couple momentarily went out of camera view, but returned as Hamilton ran away from the apartment. Johnson chased after her, threw her to the ground, and dragged her by her hair. After the assault, Hamilton ran back to the Jeep and Johnson chased her. The video shows

2

both Johnson and Hamilton exit and return to the Jeep. The video shows the Jeep leave the parking lot with both Hamilton and Johnson inside.

While Romulus officers were still at the complex, officers from the Taylor Police Department pulled up, transporting Jazzmine Hamilton in their vehicle. Romulus officers spoke with Hamilton. Hamilton reported that Johnson drove her home from Detroit that morning, and that while they were parked outside the apartment, they got into an argument about Johnson getting a phone call from another woman. Hamilton reported that Johnson slapped her, she slapped him back, and that he "got to swinging on [her] real hard." Hamilton reported that she ran in the house and told her daughter to call the police. Hamilton told officers that Johnson was trying to kick the door down, so she opened it. Hamilton told officers that Johnson came inside, heard someone on the phone with 911 and grabbed the phone and threw it into the street. Officers recovered the damaged phone from the street.

Hamilton told police that after Johnson was in the apartment that she followed him out and got back into the Jeep, where Johnson hit her again. Johnson pulled off and drove Hamilton to Taylor. Hamilton reported that Johnson pulled into a gas station near Telegraph where he continued to hit her. Hamilton told police she honked the horn to get someone's attention. Johnson then kicked Hamilton out of the car. Hamilton told officers that she did not want to press charges against Johnson.

3

## II.    Witnesses and Exhibits

The United States plans to call Jazzmine Hamilton, Romulus Police Officer Otter, and Romulus Police Officer Koziara at the hearing. The United States plans to admit photographs of the damaged door, security video from Gateway Townhomes, excerpts from Officer Koziara's and Officer Otter's body-worn cameras, and screenshots from the body-worn cameras as exhibits.

## III.    Possible Legal Issues

### a.  Jazzmine Hamilton is a Hostile Witness to the Government

The government anticipates recalling Jazzmine Hamilton as a witness at the continuation of the hearing. At day one of the hearing, Hamilton testified that she is in a dating relationship with Johnson, that she loves him, and she does not want to see him in trouble. On direct exam, Hamilton claimed to have memory loss both of the domestic violence incident itself and speaking to officers afterwards. Hamilton attributed the partial memory loss to her ingestion of liquor but could not recall what type or how much.

It is uncontroversial that a party may use leading questions during direct examination of a hostile or adverse witness. Fed. R. Evid. 611(c)(2) ("Ordinarily, the court should allow leading questions ... (2) when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party."). There are numerous opinions upholding decisions by trial courts to deem government witnesses as hostile

4

and subject to leading questions by the prosecution.  *See, e.g., United States v. Cisneros-Gutierrez*, 2008 WL 383024, *6 (5th Cir. 2008) (witness properly deemed hostile where he appeared to have feigned memory problems); *United States v. Olivo*, 69 F.3d 1057, 1065 (10th Cir. 1995) (witness properly deemed hostile where he said he was uncomfortable and hesitant to testify, even though it was unclear whether the claimed memory gaps were because witness was recalcitrant or merely forgetful); *United States v. Bowie*, 618 F.3d 802, 815–16 (8th Cir. 2010) (quoting Fed. R. Evid. 611(c)) (finding, in drug prosecution, trial judge did not err by allowing prosecutor to use leading questions during the direct examination of government witnesses because "[l]eading questions on direct examination are permitted 'to develop the witness' testimony' and to inquire of a hostile or adverse witness"); .*People of Guam v. Turner*, 1992 W.L. 371316, *2 (9th Cir. 1992) (unpublished) (holding that witness was "plainly" hostile where he renounced his previous testimony soon after taking the stand).

Here, the government anticipates that Hamilton will continue to be reluctant to truthfully answer questions and will qualify as hostile witnesses subject to leading questions under Fed.R.Evid. 611(c).

### b. The Court can consider reliable hearsay evidence.

Neither the Federal Rules of Evidence nor the Sixth Amendment applies to supervised release violation hearings. *See* Fed. R. Evid. 1101(d)(3); *United States v.*

*Kirby*, 418 F.3d 621, 627-28 (6th Cir. 2005); *United States v. Chames*, 376 Fed.Appx. 578, 581 (6th Cir.2010) (citing Fed.R.Evid. 1101(d)(3). Hearsay evidence is admissible in revocation hearings as long as it is reliable and "the defendant's need for confrontation is outweighed by the government's ground for not requiring confrontation." *United States v. Waters*, 158 F.3d 933, 940 (6th Cir. 1998).

While Defendant does not have a Sixth Amendment right to confront adverse witnesses, he does possess a limited confrontation right under Fed. R. Crim. P. 32.1(b)(2)(C), which provides a defendant subject to supervised release revocation "an opportunity to ... question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(C). The Advisory Committee Notes to Rule 32.1(b)(2)(C) state that a district court must "balance the person's interest in the constitutionality guaranteed right to confrontation against the government's good cause for denying it."

In this case, the government anticipates admitting body-worn camera recordings of statements made by the children (the twelve-year-old, the nine-year-old, and the seven-year-old) and statements made by Hamilton. The government subpoenaed Hamilton, and she appeared in court for the first hearing. The government provided Hamilton a subpoena for the second hearing and anticipates she will be available for cross-exam. However, there is good cause to allow the

6

government to introduce the children's statements to officers without requiring them to appear in court.

The statements made by the children to police are reliable, in part, because their statements were made to address an ongoing emergency. The children saw their mother being assaulted by her boyfriend and called police for help. The boyfriend (Johnson) tried to kick in the front door of their home. Before police arrived, their mother left with her assailant. The children's statements were not offered in anticipation of a future criminal prosecution against Johnson. Rather, their statements were made requesting help from the officers.

The statements made by the children to police are also reliable because they corroborated by other evidence. The nine-year-old's statements—including that her mom's boyfriend "pushed my momma and her dress is messed up" and that "my momma was in the car, and my momma was just sittin' in the front seat and he just drove off and said 'you're going to put me in jail'"—are corroborated by the security video, responding officer's body-camera recordings, and Hamilton's initial statements to police. As too are the statements made by the twelve-year-old and the seven-year-old.

There is good cause to excuse the presence of the seven-year-old, the nine-year-old, and the twelve-year-old at the continued supervised release hearing and to admit the body-worn camera recording of their statements to police.

7

Respectfully Submitted,

DAWN N. ISON
United States Attorney

/s/ Barbara Lanning
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
(313) 226-9103
barbara.lanning@usdoj.gov

Dated: October 8, 2024